Ramiro Reyes-Mendez v. Loretta E. Lynch Ms. Baldini, determine whenever you're ready. May it please the Court, my name is Maria Baldini Poterman and I represent Petitioner Ramiro Reyes-Mendez. To begin, Your Honors, I would like to address the first issue regarding particular social group. This case was previously before this Court on a first petition for review. At that time, Respondent, after we had filed our opening brief, requested remand specifically for the Board to reconsider its prior decision based on this Court's decision in Tapiera de Orejuela and this Court's new decision, Cici v. Holder. Now, in its first decision, the Board had addressed Tapiera de Orejuela. In its second decision, however, the Board did not change even one word regarding its analysis of Tapiera de Orejuela and never addressed Cici v. Holder at all. In that sense, the Board added two new paragraphs to its second decision which dealt with internal relocation and not with the issue of particular social group upon which it had requested remand in the first place. So, at this point, Your Honors, I would ask that the Board's failure to address the particular social groups that were advanced by Petitioner Reyes be directly addressed by this Court. The three groups that Mr. Reyes laid out before the immigration judge, completely in briefing before the Board, as well as before this Court in the opening brief, were one, he is a member of the Reyes family. To put this in context, Mr. Reyes' father died when he was seven. His mother left to come to the United States to work in 1988. Mr. Reyes was essentially raised by his paternal grandmother and his three uncles, Vicente, Martin, and Donato. In the year of 2000, Mr. Reyes came to the United States illegally. He was turned around briefly and came back the next day. Once he entered the United States, however, he went to live with his uncle Donato in 2001 in McHenry, Illinois. He lived with Donato and his family from 2001 to 2004. In 2006, Donato and his family returned to Mexico and opened a construction business. This was a big deal for the Reyes family. His uncle Vicente, in the meantime, owned two well-prosperous hardware stores in the state of Veracruz, in the same location where Mr. Reyes is from. After Donato returned to Mexico in 2008, he began receiving extortion calls from the Zetas. Now, to put the context of the political situation in Mexico together, the Zetas arose out of a dispute in 2003. This was after Petitioner had come to the United States, but before his uncle Donato had returned to Mexico with enough money to open a construction business. So in 2008, his uncle Donato was threatened by the Zetas and was forced to begin paying monthly extortion fees. His uncle Vicente, again, whom Mr. Reyes was raised with, also was threatened by the Zetas and began receiving extortion calls. The callers from the Zetas specifically asked about Petitioner's whereabouts. It is clear that the Zetas know that Mr. Reyes is a member of his family, and the Reyes family is clearly known. There were photos that were submitted with pictures of the hardware shops. It says, Ferrocarril Reyes in the materials. Given all of that, why wouldn't, even if we assume this social group, given that, why wouldn't relocation be okay? Your Honor, the issue regarding relocation, the regulations are actually clear. And as we pointed out in our reply brief, the respondent was relying on proposed regulations that never went into effect. The regulations that actually were placed into effect in 2000 require that the adjudicator of an asylum claim or withholding claim look at the totality of the circumstances. And with respect to the way the board rewrote its decision in particular, if I may, just for a moment, Your Honor, it's a two-step analysis that has to take place regarding internal relocation. First, could Petitioner escape persecution outside of his home state of Veracruz? And the second is, would it be reasonable for him to relocate outside of his home state of Veracruz? The documentation that was submitted in the record evidenced that the Zetas had been gaining control throughout Mexico and that it would not be safe for him to relocate. Again, Petitioner's whereabouts were specifically inquired by the Zetas in phone calls to his Uncle Vicente. The family continues to be extorted. Based on the fact of how corrupt the governments, the local governments, have become in Mexico, as part of our appeal brief to the board, we submitted evidence showing that the governor of the state of Veracruz dismissed all the police officers in the city of Veracruz due to corruption involving... Counsel, you've got a pretty good case that he can't go back to Veracruz. At least the government doesn't seem to be contesting that for purposes of this appeal. But I'd like to go back to Judge Mannion's question. I didn't think the evidence would require a finding that there is no place in Mexico he can go, does it? There are some states, particularly along the Atlantic and Caribbean coasts, where the Zetas have been stronger and other areas where they're not. They don't seem to be present. And, Your Honor, with respect to the regulations, the regulations specifically note that, and I will quote from them, they specifically reference the factors of, quote, social and cultural constraints, comma, such as age, comma, gender, comma, health, comma, and social and familial ties. In this case, petitioners' familial ties... And the I.J. addressed those, right? The I.J. addressed that she believed that because he's a young man, he could relocate. Well, it's simplifying it a little bit. He's been living on his own. He's 28 years old. He's been making a good living, has talents, hardworking, and so on, right? Yes, Your Honor. With respect to the... So, go ahead. Since he has been in the United States, he has essentially lived with family. He lived with his half-sisters and his half-sister's father, to whom his mother had been married before she was killed in 1994 in a car accident. He has always lived around family. There's no evidence in the record that he has not lived near or with family. Okay. I mean, I understand that's an argument that an I.J. might find persuasive. Why was the I.J. required to make that finding, that it would not be reasonable to ask him, in essence, why is he allowed to stay in the United States rather than go to, say, Mexico City or Guanajuato or other Mexican states where you don't have the Zeta influence? Your Honor, with respect to his ability to relocate to another area, he does not have family ties, and he's had very close relationships with his family members. Let me try to restate the question. I understand that's an argument the I.J. could have accepted. Why was the I.J. required to accept it? Your Honor, the I.J. wasn't necessarily required to accept it. What she was required to do was to consider all the factors that were listed under the Internal Relocation Regulation. You have a dilemma, ma'am. Your dilemma is that he can't relocate because it's not reasonable to be away from family, and yet you've made a strong case if he goes anywhere near this family, he's going to be labeled. So your only alternative is that he stays here. Yes, Your Honor. And I understand that, why it would be your alternative. You're going to stay close to family. When he's here, you'll leave. And all I'm saying is you've made a case, if we accept that as a social group, and he doesn't, you know, they'll be after him because they're already after the people, the family people, by getting back there and associating with them, he will be a target, and yet you're saying it's unreasonable to relocate. So the only option is that he stays here. I guess that's the summary of your argument. Yes, Your Honor, it is the summary of my argument. And that's almost unacceptable. So I guess what we're trying to get at is there's the family argument, the fact that he's always been with family, family has supported him. Was there any other reason he couldn't relocate? Yes, Your Honor, there is. He has resided in the United States since 2000, and he would be perceived as someone returning from the United States and perceived to be wealthy. And that would be regardless of which part of Mexico he went back to. Is that your position? Yes, it is, Your Honor. And, in fact, his uncle Donato was targeted upon his return and establishment of a business. But Donato, he went back to the same area, though, right where we know the Zetas are. If that's correct, then why isn't everybody from Mexico and the United States entitled to asylum here? Because if they were returned to Mexico, having worked in this country, perceived to have been economically successful, at least many of them,  Your Honor, I see that my time has expired. May I answer the question? Please. Thank you. Your Honor, in this particular instance, he is a member of a family that has done well with its businesses, and that sets him apart from, say, a campesino or a peasant worker who comes to the United States and is returning to Mexico. The Zetas, in this instance, have also contacted his family about his whereabouts. They believe that he's in the United States, and the evidence provided from his uncle was uncontroverted at the trial level. Thank you, Your Honor. All right. Thank you. Ms. Jimenez. May it please the Court, Stephanie Hennis for the respondent. The Court should deny the petition for review. The record in this case supports the conclusion that the petitioner is not eligible for withholding of removal. Well, what about this case was sent back and the fact that it wasn't really addressed, this family group issue? It's true that the case was remanded because the respondent had indicated that there needed to be additional consideration of the social group claim, and it is correct that the Board did not reevaluate that aspect of the decision. However, the Board did provide another- So do you think we should, before you do, so do you think we should resolve that then? Should resolve- The social group and finding whether or not the family- No, Your Honor. As we indicated in our response brief, the fact that the Board upheld the immigration judge's conclusion that the petitioner could reasonably relocate is an independent, dispositive basis for denying the petition for review in this case, and therefore there's no reason for the Court to address the social group claim in this case. Counsel, this does have- the phrase bait and switch does come to mind with the remand that was opposed, and we took the Attorney General and Board at their word that they would reconsider this issue on which the position seemed to be fairly weak. This is troubling. I understand your concerns. And will undermine credibility in future cases about such opposed requests. I understand your concerns, Your Honor, and they are certainly valid, and it does appear in this case that it perhaps would have been more prudent of the Board if it believed that the social group analysis was not a great way to uphold the denial in this case. It should have perhaps said something to indicate- Yeah, but it's beyond prudent. We had ordered it for them to reconsider it, and that was the whole basis for it. And so it just- it is troubling to think that if we go to that alternative analysis, we're giving the Board a pass and the government a pass. The only thing I can- well, actually, I'll bring up two points about that. One is that when the case was remanded, it did give the petitioner the opportunity to submit whatever new evidence he would have liked the Board to consider on remand once the case is back before the Board has jurisdiction over the case. So if there was the desire to submit additional evidence regarding relocation, there would have been an opportunity to do that. Was that invitation ever made explicit? It was not, and I- I would think the petitioner, that is, the respondent before the Board, might expect the Board to comply with what it promised this court it would do and not try to expand the scope of the remand. Well, I- while I do know that the remand order in this case indicated that it was granting the respondent's request for remand for consideration of a couple of cases, there was nothing that said that it would not address any of the other issues. I understand that. But look, you heard the argument a moment ago in which the other- it was the petitioner who was trying to recast the entire nature of the case. I'm troubled when the- by the suggestion that with a requested remand and a granted on specific grounds, on legal grounds to simply evaluate two new precedents, that you're suggesting we hold against the petitioner here the fact that he did not try to expand the scope of that remand. And I'm troubled by that argument as well. I'm not suggesting that that be held against the petitioner. I'm simply pointing out that the Board did provide another valid, independent, dispositive basis for denying the petition for review in this case. And so- And that was a matter that had been addressed in detail by the immigration judge. It had. It is not as though the Board just pulled a new basis out of nowhere. It now made an alternative conclusion that it would uphold the conclusion that the immigration judge reached in the decision, which was a fairly lengthy analysis of the ability of the petitioner in this case to relocate reasonably and safely within Mexico. So in that regard, any remand in this case would likely just lead to the same result once again. Of course, the proper way to do that would have been if the Board just said, you know, we will either concede or we acknowledge that his family is a protected social group, therefore we move on. That perhaps- You know, I mean, because when it goes down on a particular ground, I mean, when it's sent back for remand, that has to be addressed. So it could just say, in this case, limited to these facts. You know, if you want to, like, avoid precedent, which is understandable, perhaps, then you can reach that second question. You could reach the second- I'm saying then the second question would be clear that the Board had taken what the court had said seriously and proceeded in that way. It would have led to a more clear decision in this case. You're correct with that. I don't know how the Board perceived the remand order and remand motion in this case. All I know is that this is the new decision that we've ended up with. And you didn't write it. And I did not. And I did not, in fact, write it. And given that there is a-I'm more than in tune with the court's concerns about the wording of the decision. But given that the Board did provide this other dispositive basis, you know, the correspondent still maintains that that is a valid basis for the court to deny the petition for review. And so just to-I know you dealt with it in the brief. But just, again, in response to counsel's point that the relocation would be problematic because he's been in business with his family, he's always lived in close proximity to his family, he would continue to be a target because the family has done well. And the fact that he's been here for so long, that that would create problems in terms of future persecution. So as Your Honors pointed out, the immigration judge addressed all of those issues in her decision. The-it is true that the petitioner has relied on his family in the past. However, given the other factors in this case, the fact that he has been gainfully employed, that he has skills in auto body work, it wasn't-the record doesn't compel reversal of the conclusion that he could find work in other places in Mexico or that he would be so reliant, as the immigration judge pointed out, that it would be-that he would be so reliant on his family for support that it would be unreasonable for him to relocate to another part of Mexico. Apart from the family aspect, the record also does indicate that the Zetas, while they do have a presence in Mexico, it is more concentrated in the area where his family is located. It showed that the Zetas don't have a presence in about a third of the Mexican states. It also-the record further goes on to explain that most of the drug-related violence is more concentrated in just a very minor number of areas in Mexico, and so it showed that there are safe places that the petitioner could relocate to. There's also-in this case, there aren't any-there isn't any evidence in the record showing that there are cultural or other factors that would inhibit an adult male from living apart from his family. I see that I am out of time, Your Honors. If- Thank you. If there are no other questions, the Court should deny the petition for review. All right. Anything else, Counsel? One minute. I think you were in the red, but we had a lot of questions. One minute. Thank you, Your Honor. Just one point. There was no opportunity on remand for a petitioner to submit any other additional documents. No briefing schedule was ever set in this case. That is extremely unusual. I've litigated many cases that this Court has remanded, and we've had briefing schedules set. No briefing schedule was ever set. And you've also had situations where additional evidence was taken. Yes, Your Honor. We typically would have updated it had there been a briefing schedule set. The record is stale as of 2011 when we submitted the last set of articles that was with our original appeal brief. And did you request to provide-to brief it and to provide additional documentation? Were you given that opportunity to even make the request? Your Honor, we did not file a motion to submit additional evidence or to set a briefing schedule because the practice at the Board is to set a briefing schedule. If the Board doesn't set a briefing schedule in a very few cases that have been remanded from this Court, the Board instead has issued a decision and remanded immediately to the IJ. But in other, in particular, in other Mexican cases, this Court has remanded that I've represented. We have had a briefing schedule set. So here the procedure was exactly what? Switched bait and switch. No, no. Okay. So it goes back. It's the 2011 stale record, and the IJ just rules again. Is that what you're saying? No, the IJ never ruled on this, Your Honor. I'm sorry. The Board ruled on this. Right. The BIA rules again. The BIA went back to the alternate ground. Right. The Court sends the record back. The Board gets the administrative record back from the Seventh Circuit. And then the Board just issues a decision out of the blue. I just wanted to make sure in terms of clear. I just misspoke when I said the IJ instead of BIA. But that's all that happened. It went back. BIA looked at it again and then issued their decision. Correct, without a briefing schedule and without notice to us that they were going to re-decide the internal relocation issue. Okay. Thank you, Your Honor. Thank you. We'll take the case under advisement.